### UNITED STATES v. BALOGH.

No. 53, Docket 20312.

Circuit Court of Appeals, Second Circuit.

April 7, 1947.

Writ of Certiorari Denied June 2, 1947.

See 67 S.Ct. 1522.

Hayden C. Covington, of Brooklyn, N. Y., for appellant.

Mario Pittoni, of Brooklyn, N. Y., for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

PER CURIAM.

On a petition by the prosecution for certiorari, the Supreme Court rendered the following decision: "The petition for writ of certiorari is granted. The judgment is vacated and the case remanded to the United States Circuit Court of Appeals. Falbo v. United States, 320 U.S. 549, 64 S. Ct. 346, 88 L.Ed. 305." 67 S.Ct. 625. We interpret this to mean that the court did not pass upon the questions which we discussed upon the original appeal,[1] because it thought that we should ourselves first pass upon a question which we did not discuss, and which if decided against the appellant, made moot all that we did discuss. We therefore understand our duty to be to decide whether Balogh had "exhausted his administrative remedies" before he was served with the induction order on December 12, 1945, because if he had not, under Falbo v. United States,[2] he was obliged to respond to the order. The prosecution, when the case was before us originally, very vigorously argued this point; and we considered and overruled it, but, because, we discussed it in a kindred appeal in which we handed down our decision at the same time, we did not repeat what we had said.

Were it not for a circumstance which we shall mention presently, we should therefore conform to the Supreme Court's order, as we understand it, by merely saying that, for the reasons that we gave

---

[1] 157 F.2d 939.

[2] 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

in United States ex rel. Kulick v. Kennedy, supra,[3] we held that Balogh had "exhausted his administrative remedies" before the order of induction was served upon him, and that therefore, by virtue of Estep v. United States,[4] he was privileged upon his trial to challenge the regularity of the proceedings of the authorities which drafted him. Indeed, as we read Gibson v. United States,[5] we should have been right in so ruling, had Balogh been physically examined within 90 days before the induction order was served upon him; and it is because he had not been so examined that the appeal takes on a different face. When the case was before us originally we had not discovered the Army Regulation, passed on August 10, 1944,[6] the important part of which we quote in the margin;[7] nor did either side call it to our attention. This declared that 90 days after a registrant has been examined his examination becomes void, and that he must be reexamined before induction. On December 12, 1945, Balogh's only physical examination, which had been on April 21st, had therefore ceased to be valid; and he should have been subjected to a new and "complete examination," which might have resulted in his exemption or reclassification. Therefore, unless the regulation was itself invalid, he had not "exhausted his administrative remedies" within Falbo v. United States, supra,[8] and was not within Estep v. United States, supra.[9]

Balogh asserts that the regulation was invalid because it ran counter to the amendment of the Selective Service Act, passed December 5, 1943.[10] That act was intended to relieve registrants of a serious embarrassment. A man who had not been examined might learn that he would soon be subject to induction; but he could not know whether he might not be rejected when he appeared. Meanwhile, he would have to prepare against the possibility that he would be accepted by making definitive arrangements, all of which would be abortive, if he were rejected. This caused inconvenience and hardship which the amendment avoided by giving a registrant the means of learning in advance whether he would pass his examination, so that he should have some assurance that he would not have to undo his preparations. Balogh insists that it was intended to do more than this: that is, to assure a registrant who had been once examined and passed that he would be inducted. It is of course true that such an examination would give such an assurance, and that the regulation impaired it by invalidating it after 90 days; a registrant, having made ready for induction, if it were delayed for over 90 days, might find himself in the same predicament as though the amendment had not been passed. Whatever might be the necessary implications from the amendment, if it had been in other words, the language chosen leaves no doubt that it did not have the effect which Balogh desires; for it explicitly declared that the putative physical examination shall be "subject to re-examinations," and indeed, even more significantly, to "periodic re-examination." These words were an invitation to promulgate just the kind of regulation which the Army did promulgate; it put all registrants on guard that they became "subject to" a new examination every three months; and it was valid, so far as concerned the amendment.

So much for the Army Regulation. The Selective Service Regulations

---

[3] United States ex rel. Kulick v. Kennedy, 157 F.2d 811.

[4] 327 U.S. 114, 66 S.Ct. 423.

[5] 67 S.Ct. 301.

[6] 615-500(e).

[7] "e. Registrants forwarded for induction.—Registrants forwarded for induction will ordinarily have had a preinduction physical examination within 90 days and will require only a physical inspection. Registrants so forwarded, who have not been previously examined, or who have been previously examined and found not acceptable, or who have been examined and found acceptable more than 90 days previously, will be given a complete examination. The preinduction physical examination will be void after 90 days from the date of the examination shown on DSS Form No. 221."

[8] 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

[9] 327 U.S. 114, 66 S.Ct. 423.

[10] 57 St. at L. 599, 50 U.S.C.A.Appendix, § 304a.

which, as we read Billings v. Truesdell,[11] are paramount to them in authority, contained a provision[12]—originating we cannot learn when—also invalidating a physical examination after 90 days; but it was repealed on July 3, 1944; and, at least after July 23, 1945, the only relevant provision of these regulations read as follows: "Every registrant before he is ordered to report for induction shall be given a pre-induction physical examination." Balogh argues that, if the Army Regulation invalidated his examination of April 21, 1945, then it was as though he had never been examined at all, and the Selective Service Regulation which we have just quoted required a physical examination before induction. Since he was not given such an examination, the induction order was void, and he might safely ignore it under the doctrine of Tung v. United States.[13] We assume for argument, although it is by no means certain, that by virtue of the Regulation of July 23, 1945, no registrant, whose last examination was more than 90 days old, could be "ordered to report for induction" until he had been given another examination. If so, the induction order of December 12, 1945, was irregular, and may have deprived Balogh of a privilege which, in theory at least, might have resulted in his rejection. We cannot agree, however, that that made the order itself void within the meaning of Tung v. United States, supra.[14] In that case the local board had passed an order after Tung, the registrant, had taken a step which, as the court held, was equivalent to an appeal. The decision was that thereafter the case was no longer before the local board at all, and any action which it took was non coram judice. The analogy of an appeal in judicial proceedings is apt. The case at bar is quite different; at worst the order was merely irregular in depriving Balogh of an opportunity which would have been open to redress, had he appeared and demanded it. By absenting himself he abandoned that opportunity. It is of course true that the law has always distinguished between defects so basic that the court's action is brutum fulmen and may safely be flouted, and those which do not make it invalid, until a court has set it aside. It is doubtful whether this has ever been more than a difference of form; but, whether it is or not, the distinction is apparently on the wane, as was last quite strikingly illustrated in the case of United States v. Lewis.[15] Be that as it may, the error to have such a far-reaching effect, especially in the case of a tribunal from which the party aggrieved may appeal, must go deep into the court's power if it is to deprive its order of all sanction. Anything else would be an open invitation to lawlessness. It may well be true that a registrant who has done all that the law prescribes to remove himself from the power of the local board, may safely disregard any further steps it takes until his case comes back to it; but it would be absurd to say that a registrant who has been ordered to report may safely treat that order as waste paper, because he has been deprived of a second preliminary examination.

For the foregoing reasons we hold that Balogh had not "exhausted his administrative remedies" within the meaning of Falbo v. United States, supra,[16] and it follows that he was not entitled to raise those objections to his induction which we considered and decided in his favor upon the first appeal.

Conviction affirmed.

[11] 321 U.S. 542, 552, 64 S.Ct. 737, 88 L. Ed. 917.

[12] § 629.1(b).

[13] 1 Cir., 142 F.2d 919.

[14] 1 Cir., 142 F.2d 919.

[15] 67 S.Ct. 677.

[16] 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.