James MASON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 14286.

United States Court of Appeals,
Ninth Circuit.

Dec. 9, 1954.

Rehearing Denied Feb. 2, 1955.

J. B. Tietz, Los Angeles, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and BYRNE, District Judge.

POPE, Circuit Judge.

The appellant Mason was convicted under an indictment charging him with having knowingly failed and neglected to comply with an order of his local Selective Service board to report for induction in the armed forces of the United States as provided in the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. Upon appeal to this court he asserts that the order for induction was invalid and void; that he was denied a fair hearing and due process in the course of his classification by the Selective Service boards; that these boards failed to comply with sundry applicable regulations; and that his classification in Class I–A, as available for full military service, was without basis in fact.

We consider first the contention with respect to the order to report for induction.

As part of its proof, the Government introduced its Exhibit 1 which was the entire Selective Service record relating to the defendant, and which disclosed all the proceedings had before the various boards relating to his classification as a registrant under the Act. This exhibit was received without objection on the part of the defendant and it contains a copy of the order to report for induction. This order was on a printed form furnished by the Selective Service system to the local board and designated SSS Form 252, (revised 8–23–51). It is addressed to the defendant, Mason, and orders him to report to the local board at a designated address at 6:30 A.M. on the 18th day of June, 1953, for forwarding to an induction station. Upon the line provided for signature appears the name "Walter Nixon" followed by the initials, "A.E." The record shows that this Walter Nixon was a member of the board and that the initials are the initials of a Mrs. Earl, the clerk of the local board, and that it was she who signed Nixon's name adding her own initials following the signature.

The contention that the order to report for induction was void and of no effect is based upon the provisions of the following regulation, Title 32, § 1604.59: "Signing Official Papers. Official papers issued by a local board may be signed by the clerk of the local board if he is authorized to do so by resolution duly adopted by and entered in the minutes of the meetings of the local board; provided, that the chairman or

a member of the local board must sign a particular paper when specifically required to do so by the Director of Selective Service." It is argued that because there was no proof of a resolution adopted by the local board authorizing the clerk to sign this paper, the record fails to show a valid induction order and hence Mason's failure to report for induction would constitute no offense on his part.

It is unnecessary to consider the question whether the court which heard this case, after jury trial was waived, would be permitted to take into consideration the usual presumption that official action has been regularly performed and hence draw the inference that the resolution of authorization had preceded the appending of this signature by the clerk.[1] This court has held in Talcott v. Reed, 9 Cir., 217 F.2d 360, that the requirement that board orders shall be signed by board members was directory only and that omissions in this regard do not affect the validity of the order. This is in accord with what Judge Goodrich said for the full court sitting en banc in United States v. Hagaman, 3 Cir., 213 F.2d 86, 91: "On the other hand * * * where there has been substantial compliance, so that a man has had all the consideration due him, the courts have refused to reverse for mere technical irregularities." The court was there dealing with a draft board's failure to conform to regulations in respects which did not operate to prejudice any substantial right of the registrant.

We hold therefore that the order to report for induction was a valid one.

This brings us to a consideration of a circumstance present here which distinguishes it from most of the other cases in which this court has had occasion to review judgments of conviction for failure to comply with the induction requirements of the Act. Unlike the registrants in other similar cases, Mason did not report for induction and then simply refuse to submit thereto by taking the step forward or performing the other required overt acts to indicate submission. He refused to report at all. A few days following the sending of the order of induction Mason wrote to the local board: "I will not take the oath, therefore I will not report for induction."

The consequence of this failure to report for induction is that Mason did not exhaust his administrative remedies and hence decision here must be controlled by the rule stated in Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, as applied by this court in Williams v. United States, 9 Cir., 203 F.2d 85, 88,[2] and by the Court of Appeals for the Second Circuit in United States v. Balogh, 160 F.2d 999, certiorari denied 331 U.S. 837, 67 S.Ct. 1522, 91 L.Ed. 1850. In the Williams case we held that the appellant had not exhausted his administrative remedies

---

1. In Knox v. United States, 9 Cir., 200 F. 2d 398, this court refused to indulge such a presumption. In that case the Selective Service record wholly failed to disclose that the local board took any action for classification of the registrant following his personal appearance notwithstanding an express requirement of the regulation that it should do so. We think the Knox case is distinguishable from the present one in that the omission in the Knox case was one of substance and here the irregularity, if any, relates merely to the form of an order which the board was obliged to issue as soon as registrant's I–A classification had become final.

2. The Williams case was decided under the 1948 Act while the Falbo decision was made under the 1940 Act. The legislative history of § 12 of the 1948 Act, Title 50 U.S.C.A.Appendix, § 462, the section under which Mason was indicted, discloses that it contemplated that the scope of review under the 1948 Act would be the same as defined by the Supreme Court in enforcing the 1940 Act. See Senate Report No. 1268 relating to the bill which was enacted into the 1948 Act, U.S.Code Cong.Serv., Vol. 2, 80th Cong., Second Session, 1948, p. 2008, where the Committee cited the Falbo case and Estep v. United States, 327 U.S. 114, 66 S. Ct. 423, 90 L.Ed. 567, which were the cases relied upon by this court in the Williams case.

**378**

within the meaning of the Falbo case since he had not reported for induction at an induction center and therefore "any injury resulting from the action of his Board has not materialized, since he might be rejected."

At the oral argument it was contended that since the decision in the Falbo case the regulation has been amended so as to provide for a pro-induction physical examination;[3] that this examination had been given to Mason and hence there was no possibility of his rejection at the induction center. A similar argument was made and rejected in United States v. Balogh, supra, for the reason that under the army regulation of August 10, 1944, there set forth, registrants reporting more than 90 days after their pre-induction physical examination are given a new physical examination; hence, since Balogh had received his pre-induction physical examination more than 90 days before the induction order was sent to him, he was without standing before the court as he had not exhausted his administrative remedies within the rule of the Falbo case.[4] At the time Mason was given his order to report for induction the army regulation set forth in footnote 7 in the Balogh case had been superseded by a new regulation dated April 8, 1953, which provided, in substance, that if induction was not accomplished within 120 days, in cases of ordinary registrants, or within one year, in cases of postponed registrants, after the pre-induction examination, then those reporting after those times would be submitted to a new physical examination.[5]

The record here shows that Mason was given his pre-induction physical examination on April 5, 1951, and on that day a certificate of acceptability was issued by the appropriate officer. His order to report for induction, was dated June 5, 1953, more than two years later. Hence, under the regulation, last referred to, Mason had he reported for induction, would have been given a new medical examination upon which he might have been rejected. In fact, his selective service record, exhibit 1, contains the unexecuted standard form 88 referred to in the army regulation, bearing his name and indicating that the blank is to be used for an examination upon induction, and the date of examination is June 18, 1953, the date upon which he was ordered to report for induction. We may infer from this that military authorities at the induction center had prepared these blanks for use upon Mason's physical examination and when he failed to appear the unused blanks were inserted in his Selective Service file to be returned to the local board.

■ In the Balogh case, supra, the court discussed the question of the validity of the army regulation in view of the appellant's contention that the regulation was invalid because it ran counter to the Act of December 5, 1943, which first provided for the preinduction physical examination. The court rejected that argument pointing out that the Act, 57 Stat. 599, 50 U.S.C.A.Appendix, § 304a, used the words "subject to reexaminations" and "periodic reexamination". The language of the Act of December 5, 1943, adopted as an amend-

3. See Gibson v. United States, 329 U.S. 338, 346, 67 S.Ct. 301, 91 L.Ed. 331.

4. For a similar decision applying to a later regulation, see United States v. Wider, D. C., 119 F.Supp. 676, 680.

5. Subparagraph 12a, Spec.Reg. 615–100–1, dated April 8, 1953: "As provided by SR 615–180–1, registrants found acceptable for military service on pre-induction examination and reporting for induction will undergo a physical inspection if the in-

duction is accomplished within 120 days, in case of ordinary registrants, or within a year in case of postponed registrants, after the pre-induction examination. However, a new physical examination will be given to such registrants if more than 120 days have elapsed since the pre-induction examination, in the case of ordinary registrants, or more than one year, in the case of postponed registrants. A new Standard Form 88 will be accomplished in such cases."

ment to the 1940 Act, was not carried forward into the 1948 Act, but Mason's preinduction physical examination was provided for by the applicable regulations, Title 32, § 1628.1 to 1628.26. Section 1628.25 provided for the return of the record of that physical examination to the local board together with the certificate of acceptability such as that which was supplied to the local board in Mason's case. Such regulations were authorized by § 10 of the Act, Title 50 U.S.C.A.Appendix, § 460, giving the President authority to prescribe the necessary rules and regulations to carry out the provisions of the Act. § 4(a), Title 50 U.S.C.A.Appendix § 454(a), provided generally for classification and examination of each registrant, as soon as practicable following his registration, "both physically and mentally, in order to determine his availability for induction for training and service in the Armed Forces".

 We find nothing in the 1948 Act suggesting any conflict between that Act and the army regulation here referred to (Footnote 5, supra). On the contrary, § 454, supra, expressly delegates to the Defense Department the task of determining the acceptability of registrants under the Act.[6] We think it may be said that the army regulation here alluded to was one adopted pursuant to the express authorization granted by the Act for the establishment of standards prescribed by the Secretary of Defense. Both the Secretary of Defense and the Secretary of the Army had general authority to prescribe such regulations, 5 U.S.C.A. § 22,[7] 10 U.S.C.A. § 16. The regulations of the President relating to the Selective Service System are also fully consistent with and contemplate the possibility of rejection of the registrant by the armed forces because of failure to pass a full physical examination when he reports for induction. Thus § 1632.14(b) (6) makes it the duty of the registrant to follow instructions for his transportation back to the local board if "he is not accepted by the armed forces". § 1632.30 provides for the board's reclassification of a man who has been forwarded for induction and who has been rejected. We perceive no reason for questioning the validity or applicability of the army regulations.

It is argued that the rule of Falbo v. United States, supra, is inapplicable in this case for the reason that this appellant sought to present to the court defenses disclosing that he was denied a fair hearing and procedural due process, and that since these defenses raise jurisdictional questions, the rule of Falbo should not cut them off because of failure to exhaust administrative remedies. The complete answer to this is found in the action of the Supreme Court in United States v. Balogh, 329

---

6. "No person shall be inducted into the Armed Forces for training and service or shall be inducted for training in the National Security Training Corps under this title [§§ 451–454 and 455–471 of this Appendix] until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense".

7. "§ 22. Departmental regulations. The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. (R.S. § 161.)"

This was section 161 of Title IV of the Revised Statutes which Title was made applicable to the Department of Defense by § 4(d) of the National Security Act amendments of 1949. Laws of the 81st Cong., 1st Sess., C. 412, Public Law 216, Title 5 U.S.C.A. § 171–1. Special regulations No. 615–100–1, dated April 8, 1953, quoted in footnote 5, supra, was issued by "Order of the Secretary of the Army: J. Lawton Collins, Chief of Staff, United States Army", and was endorsed: "Official" by the Adjutant General. It must be taken to be the Act not only of the Department of the Army but of the Department of Defense under the rule of Wilcox v. Jackson, 13 Pet. 498, 513, 10 L.Ed. 264, set forth in United States v. Walker River Irr. Dist., 9 Cir., 104 F.2d 334, 338.

U.S. 692, 67 S.Ct. 625, 91 L.Ed. 605. There the Supreme Court, relying upon Falbo, reversed the judgment of the Court of Appeals rendered at an earlier stage of the Balogh case, United States v. Balogh, 2 Cir., 157 F.2d 939, 944. A reading of the opinion of the Court of Appeals will disclose that that Court reversed Balogh's conviction for reasons similar to those sought to be urged by Mason here, namely, that Balogh had been denied a fair hearing. There the board relied upon the report of a panel of clergymen to which it had improperly submitted certain questions relating to the registrant. The court found that the board had thus made use of evidence which Balogh had no chance to answer saying: "The use made of the report, quite aside from the partiality shown by the board, of which we have already spoken, made the hearing unfair." But the per curiam decision of the Supreme Court vacated the judgment and remanded the case to the Court of Appeals citing Falbo v. United States.

Finally it cannot be argued that the provision for Mason's preinduction physical examination completed, at that stage, the administrative process of determining whether he shall be selected for military service. A similar argument was rejected in Billings v. Truesdell, 321 U.S. 542, 555, 64 S.Ct. 737, 88 L.Ed. 917. The court there held that the regulations relating to a preinduction physical examination did not effect any change in the concept of "induction". And in Estep v. United States, supra, which was later in point of time than Billings v. Truesdell, and related to the registrants governed by the preinduction regulations, the court did not suggest that the rule of the Falbo case would not have applied to Estep had the latter failed to report for induction. The court said at page 123 of 327 U.S. at page 428 of 66 S.Ct., 90 L.Ed. 567: "In the Falbo case the defendant challenged the order of his local board before he had exhausted his administrative remedies. Here these registrants had pursued their administrative remedies to the end. All had been done which could be done."

Upon the authority of the cases here cited we hold that the appellant was without standing to assert in the trial court the invalidity of the order for induction.

The judgment is affirmed.