UNITED STATES of America,
Plaintiff-Appellee,

v.

Peter Hanlon IRONS, Defendant-
Appellant.

No. 16674.

United States Court of Appeals
Sixth Circuit.

Nov. 30, 1966.

Morse Johnson, Cincinnati, Ohio (Thomas A. Luken, Cincinnati, Ohio, on the brief), for appellant.

Arnold Morelli, First Asst. U. S. Atty., Cincinnati, Ohio (Joseph P. Kinneary, U. S. Atty., Cincinnati, Ohio, on the brief), for appellee.

Before O'SULLIVAN and EDWARDS, Circuit Judges, and MATHES, Senior District Judge *.

MATHES, Senior District Judge.

Appellant waived trial by jury, and was tried and convicted by verdict of the District Judge of two violations of the Universal Military Training and Service Act, as charged in the indictment: (1) willful failure to "report for and submit to an Armed Forces Physical Examination", and (2) willful failure to "report for or submit to induction into the armed forces * * *"; all in violation of 50 U.S.C.App. § 462.

From the judgment and concurrent sentences imposed following his conviction, appellant appeals. Although he chooses various ways of saying it, the single ground upon which appellant rests his appeal is that "there was no basis in fact" for the 1-A classification given him by the local draft board. [See: Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946).]

The relevant facts are not in dispute. Appellant was born in 1940. In September of 1958, he registered under the Selective Service Act with local board 55 in Cincinnati, Ohio. On July 27, 1961, appellant was classified 1-A by local board 55, and was notified by the board on August 14, 1961 of his 1-A classification, but intentionally failed to appeal.

---

* William C. Mathes, Senior District Judge of the Southern District of California, sitting by designation.

On January 25, 1963, the local board sent to appellant a written order directing him to report for an Armed Forces physical examination on February 8, 1963, but appellant intentionally refused to report for or submit to a physical examination.

Instead of obeying, appellant sent a letter to the board stating *inter alia:*

"I have received the Order to Report for Armed Forces Physical Examination, and I must state my unwillingness to undertake such an examination.

In the past, I have outlined to you at great length my objections to the draft on logical grounds. But my objection also stems, and perhaps I have not made this clear, from moral and philosophical grounds. The Selective Service System has ruled that moral and philosophical exceptions to the system are not admissible grounds for exemption, but I believe this to be discriminatory and superficial."

On April 2, 1963, local board 55 sent to appellant a written order to report for and submit to induction into the armed forces of the United States on April 19, 1963, but appellant intentionally refused to report for or submit to induction as ordered.

In appellant's brief before us, he concedes that the record shows he "denounced the entire Selective Service System and reiterated his refusal to cooperate in any way with it. * * *"

Appellant now contends that the record made in his correspondence with the local board discloses that he should have been classified as a conscientious objector (1-O), because of the definition of "a Supreme Being", within the meaning of § 6(j) of the Act [50 U.S.C.App. § 456(j), (1958 ed.)], which was formulated in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). As Mr. Justice Clark there observed for the Court: "The crux of the problem lies in the phrase 'religious training and belief' which Congress has defined as 'belief in a relation to a Su-

preme Being involving duties superior to those arising from any human relation'. * * * A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption * * *." [See Goldfarb, Three Conscientious Objectors, 52 A.B.A.J. 564 (1966).]

This is the test, and how appellant meets it is revealed by his entire correspondence with the local board, and especially by his last letter of May 17, 1963, wherein he declares: "I do not believe that I have any duties 'superior to those arising from any human relation', since the entirety of my life involves human relationship."

■ Assuming that appellant could nonetheless qualify for the conscientious-objector classification (1-O) under the *Seeger* definition of "Supreme Being", he still confronts the fact that he emphatically waived any such classification by refusing to claim the exemption. [See: United States v. Schoebel, 201 F. 2d 31, 32 (7th Cir. 1953); United States v. Rubinstein, 166 F.2d 249, 257–258 (2d Cir. 1948).]

Not only did appellant spurn all administrative remedies available to him, including appeal [cf. Maddox v. United States, 264 F.2d 243 (6th Cir. 1959)]; he also refused to report for, or submit to a physical examination. Conscientious objectors are not excused from a physical examination. Indeed, no registrant is, and for good reason. [See Selective Service Regs. § 1628.11, 32 C.F.R. § 1628.11 (1965 Supp.).] Even if improperly classified 1-A, there remains the possibility, unfortunately all too great in these times, that he will fail the physical examination and be reclassified as 4-F. Where that is the result, all constitutional and other problems incident to 1-A classification disappear of course, *eo instanti*. [See: Falbo v. United States, 320 U.S. 549, 553, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Moore v. United States, 302 F.2d 929 (9th Cir. 1962); United States v. Balogh, 160 F.2d 999 (2d Cir. 1947).]

■ The same policy requires every registrant to report for induction as ordered, even though he may have valid legal grounds for refusing to submit to induction. [Cf.: Estep v. United States, supra, 327 U.S. 114, 66 S.Ct. 423; Williams v. United States, 203 F.2d 85, 88 (9th Cir. 1953).]

■ The most that can be said, then, in response to appellant's appeal here is that he is admittedly guilty of refusing to report for and submit to a physical examination, as charged in count one; and it is equally clear that he is guilty of refusing to report for induction, as charged in count two of the indictment. However, we need not reach the point of decision as to count two, since the sentences imposed on both counts run concurrently. [See: United States v. Romano, 382 U.S. 136, 138, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); United States v. Gainey, 380 U.S. 63, 65, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Emspak v. United States, 349 U.S. 190, 195, 75 S.Ct. 687, 99 L.Ed. 997 (1955); Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929).]

The judgment of the District Court is affirmed.

O'SULLIVAN, Circuit Judge (concurring).

I concur in Judge Mathes' opinion. It is a correct and adequate disposition of the appeal before us, but in view of the dissent of Judge Edwards I feel it appropriate to add the following observations.

The dissent assumes that Irons' refusal to comply with the requests of his draft board was prompted by a belief that he would not be accorded a conscientious objector status. I do not so read the record. He persistently refused to seek conscientious objector status. That his resistance was not entirely the product of an unwillingness to accept "a Supreme Being" is portrayed by his trial testimony.

"Q. In other words, your objection was not just to the supreme being clause of the selective service statute? Your objection was to the whole system of selective service as regards compelled duty of any sort; isn't that correct, during that period of time?

"A. Yes."

The District Judge, who tried this case without a jury, made Findings of Fact, two of which are as follows:

"4. The defendant Irons did not claim for himself a classification of conscientious objector in his letters (which were placed in evidence) to the Board because such letters expressly rejected any such classification.

"5. The statements and information in defendant Irons' letters (which were placed in evidence) to the Board did not constitute a claim for a classification of conscientious objector, even if such statements had been made on the forms of the Selective Service System, because said letters expressly rejected any such a classification."

The evidence amply supports such findings. In 1958, appellant Irons registered with his Draft Board without claiming exemption whatsoever; ever since that year, through his final refusal to report for induction, he was careful to insist that he was not making, and would not make, application for conscientious objector status. The following extracts from communications which he addressed to his Draft Board are illustrative. In 1960 upon returning his draft card to his Board, he stated:

" * * * I have formulated what to me is a philosophy of life which enables me in good conscience to decide, on the basis of my deeply held moral convictions, *that any cooperation* with a system that recognizes the possibility of war is repugnant and incompatible with that philosophy." (Emphasis added.)

On December 21, 1960, in refusing a duplicate draft card, he said,

"I have thought long about applying for 1-O [a conscientious objector classification involving certain kinds of civilian, non-combatant duty] classification, but this would tacitly assume that I recognize the validity of your jurisdiction."

On March 16, 1961, he made a statement in his own handwriting to representatives of the FBI, as follows:

"I have no intention of carrying on my person a Selective Service card.

"I belong to an un-named group, recently formed, of individuals from different colleges, who have started a movement to persuade other students (college and high school) to refuse to register for Selective Service, or if registered, to disassociate themselves with Selective Service.

\* \* \* \* \* \*

"*I do not desire to apply for the position of conscientious objector* (C.O.). I feel that the requirement of an applicant as a C.O. is unconstitutional, since reference to religion is prohibited by the First Amendment to the Constitution. I do not feel that Selective Service is entitled to question me as to whether or not I believe in a Supreme Being.

"*Even if I were allowed to enter a C.O. status without submission of the applicant's required forms relating to religious references, I still would be unwilling to accept C.O. classification since I disagree with the Universal Military Training Act.*" (Emphasis added.)

In 1962, after being advised that he was classified 1-A and had certain rights of appeal under the Selective Service System, Irons returned his notice of classification with a letter stating:

"I am returning herewith SSS Form 110, Notice of Classification, *as I do not wish to be considered a participant in the Selective Service System.*

\* \* \* \* \* \*

"*I have not requested classification as a conscientious objector since I feel that to do so is to accept the right of the Selective Service System to compel adherence to their authority. To work within the system, even as a conscientious objector, is to recognize the legitimacy of forced conscription, and this I cannot accept. While I realize that there are those who do accept this authority, I cannot do so.*" (Emphasis supplied.)

In 1963, after he had been notified to appear for physical examination, he replied that he would not do so and indicated that he objected to the preferential treatment accorded to believers in a Supreme Being. However, in a letter on February 4, 1963, he went on to say:

"My basic belief that the draft is not a legitimate function of a state *would be lessened, but not overcome,* if the Selective Service System were to exempt all those who had sincere moral or philosophical objections to it." (Emphasis added.)

In April, 1963, he was ordered to report for induction on April 19, 1963. On April 9, 1963, he advised the Board by letter that he would not do so. His Draft Board, which had exhibited becoming patience with Mr. Irons, made a last effort to accord him exemption as a Conscientious Objector. They expressed a willingness to consider whether the philosophic views he had avowed in his many addresses to them might indeed be accommodated to a conscientious objector status. By letter dated May 4, 1963, the Board stated,

"On February 4, 1963, we received an undated letter from you with respect to this order. [Order to report for induction] In reviewing that letter we note that among other things you stated 'I have come to consider myself a Quaker.' *This statement raises a question in our minds as to whether or not you may claim to be a conscientious objector, and this question is further supported by numerous other expressions that you have written that might indicate a claim of conscientious*

*objection.* The Selective Service Regulations require that when a registrant enters a claim of conscientious objection it is necessary that the local board forward a Special Form for Conscientious Objectors, SSS Form 150, to him to afford him an opportunity to enter his claim in his file by completing and returning the form. *It is our policy to liberally interpret statements of registrants with respect to a possible claim of conscientious objection as a request for a Special Form for Conscientious Objector.* Because of this we are forwarding such a form to you in order that you may complete and return it to us to furnish information substantiating a claim that you may have." (Emphasis supplied.)

On May 17, 1963, defendant Irons replied that he could not "in good conscience avail (himself) of the procedures for exemption as a Conscientious Objector." He felt the standards for exemption were "discriminatory and unconstitutional." He stated further,

"But aside from this I have a deeper conviction that *the Selective Service System itself is immoral,* in that service of any kind, if it is to be sincere, cannot be compelled.

"Let me emphatically repeat that, your generous offer to interpret my answers to the form liberally notwithstanding, my firm conviction is that *the mere asking of the questions, especially those about religion, is unconstitutional.*

\*      \*      \*      \*      \*      \*

"I have here mainly raised technical objections to the Act. But aside from these objections, I firmly believe that the philosophy underlying *the whole concept of conscription is a dangerous incursion upon the democratic values we cherish. Only if we abandon conscription can we effectively call on our youth to serve their country voluntarily.*" (Emphasis supplied.)

The Draft Board never refused, and had no opportunity to refuse, Irons a conscientious objector status; he carefully refused to apply for it.

Appellant's address to this court and the dissenting opinion are bottomed upon United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850 (1965). That such case is inapposite here is immediately disclosed by the recited fact that "He [Seeger] *first claimed exemption as a conscientious objector* in 1957 after successive annual renewals of his student classification." 380 U.S. at 166, 85 S.Ct. at 854. Such was likewise the position of the other registrants involved in the *Seeger* case.

The dissenting opinion states "The record before us also contains the following affidavit signed by Irons," and then sets out Irons' affidavit in which he avers his willingness to accept conscientious objector status. However, neither the time nor the circumstances of such affidavit's entry into our record are identified. It was filed on September 27, 1966, after the case had been submitted to us for decision, in response to a question propounded to Irons' counsel at the request of Judge Edwards. The dissent also states "Irons asserted a desire for conscientious objector status *promptly* after the *Seeger* decision." (Emphasis supplied.) Support for this must be found, if at all, in the colloquy between members of this panel and government counsel upon the argument in this Court. There the government attorney stated, in substance, that up to the time of trial the government did not know that Irons would accept conscientious objector status. There is nothing in the record made in the District Court supporting a claim that after the *Seeger* decision Irons *promptly* asserted a desire for conscientious objector status. A stipulation of facts was filed and the trial was commenced after the *Seeger* decision. Neither in the stipulation of facts nor in the appendix furnished to us do we find any record statement by Irons' counsel that Irons would then accept conscientious objector status. There is no evidence that he sought reclassification by his Draft Board. Appellant's briefs in this Court neither assert nor rely upon

a claim that Irons sought conscientious objector status "promptly after *Seeger*."

I do not think Irons' present attitude calls for setting aside his conviction, which followed clear and deliberate refusal to use any of the processes available to him to have his status clarified; and in all events such attitude cannot affect his conviction of wilful failure to report for physical examination, as charged in count one of the indictment.

EDWARDS, Circuit Judge (dissenting).

This case poses more difficulty for me than it seems to for my brethren.

Appellant Irons was tried, convicted, and sentenced to three years in the federal penitentiary on an indictment which in two counts charged him with "wilfully and knowingly" failing to perform two different duties required of him by the Universal Military Training and Service Act, 62 Stat. 613 (1948), 50 App. U.S.C. § 456(j) (1964).

The question in the background of this case is whether or not Irons can be guilty of "wilfully and knowingly" failing to perform the acts concerned when he did not know (nor did anyone else) that the statute (as subsequently constitutionally interpreted in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850 (1965)) provided an exemption for which he could conscientiously apply.

Appellant Irons' crucial decisions vis-a-vis his government were made at a time when he had every reason to believe that conscientious objector status was not available to him. Prior to *Seeger*, supra, conscientious objector status had never been accorded to persons like Irons who were not prepared to acknowledge "a Supreme Being." This was true even though the persons concerned regarded war on deep moral and religious convictions as an anathema in which they could not conscientiously participate. Berman v. United States, 156 F.2d 377 (C.A.9, 1946), cert. denied, 329 U.S. 795, 67 S.Ct. 480, 91 L.Ed. 680 (1946); United States v. Bendik, 220 F.2d 249 (C.A.2,

1955); Universal Military Training and Service Act, supra.

The form supplied Irons by his draft board employed the statutory language which required his affirmation of belief in "a Supreme Being." However simple this affirmation may seem to those of us of more orthodox religious sentiments, patently it was not simple for Irons. Moreover, such decision may not be constitutionally demanded of one of our citizens as a condition precedent to exercise of a legal privilege without violation of the guarantee of religious freedom contained in the First Amendment. United States v. Seeger, 326 F.2d 846, 851 (C.A. 2, 1964), aff'd, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850 (1965); Torasco v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961).

The court's opinion seems to assume as a fact a conclusion as to which the record appears to me to be most ambiguous. This conclusion is that Irons' refusals of physical examination and induction were founded upon total rejection of any governmental power over his conduct. My brother O'Sullivan has quoted most of Irons' statements on this score. This position, of course, would not allow Irons to serve as a conscientious objector any more consistently than as a combat soldier.

As this record discloses, however, Irons also repeatedly referred to his position in conscientious objector terms. I refrain from quoting Irons' prolific writing on this topic—except for sufficient to show that Irons' views are more than arguably parallel to the sort of convictions which *Seeger* made eligible for conscientious objector status for the first time. A review of the language of the Supreme Court in its *Seeger* decision as compared to the positions taken by Irons seems to me to indicate that he would have applied for and might have been accorded conscientious objector status by his board if *Seeger* had been decided before and not after May 14, 1963.

It seems significant to me that Irons asserted a desire for conscientious objector status promptly after the *Seeger*

decision. It is clear that he never rejected conscientious objector status after *Seeger*.

The record before us also contains the following affidavit signed by Irons:

"Peter Hanlon Irons, the appellant in this action, being first duly sworn states that he has been ordered by the Court to serve and file with the Clerk of Court his verified response to the following inquiry: 'Does appellant desire that his appeal be construed as his affirmation of a desire and willingness to seek and (if granted) to serve in conscientious objector status under the Universal Military Training Act as construed by United States v. Seeger, 380 U.S. 163 [85 S.Ct. 850] (1965)?'

"Peter Hanlon Irons further states his response to the above inquiry is: ' "Yes" and I understand this answer to mean that with the United States v. Seeger interpretation controlling, if I were classified 1-O (conscientious objector status) I would report for a physical examination and would perform "civilian work contributing to the maintenance of the national health, safety, or interest" as provided in 50 USCA App. Section 456(j).' "

My brothers and the District Judge feel, however, that Irons' failure to exhaust his administrative remedies forecloses any review of his classification or of any action by him or the Selective Service Board after February 8, 1963. This was the day Irons was ordered to report for his physical and failed to do so.

If the Selective Service Board had itself treated its own orders as final, this argument would have compelling force. Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346 (1944) and Estep v. United States, 327 U.S. 114, 66 S.Ct. 423 (1946). It is clear to me, however, that the Selective Service Board had not as of that date finally decided upon Irons' classification.

On May 14, 1963, *after* Irons had failed to report for both physical and induction, the Selective Service Board sent him a conscientious objector form asking him whether he desired to claim conscientious objector status. The record does not clearly disclose whether this was done because the Selective Service Board belatedly felt that they should have considered Irons' letters prior to notice of physical exam and induction to have constituted such an application—or whether it simply granted a last opportunity for him to apply as a matter of administrative grace. In either event the record discloses that on July 28, 1964 an indictment for "wilfully and knowingly" failing to follow the orders of the draft board was the next official action following Irons' rejection of the conscientious objector form sent him in May 1963.

The conscientious objector form accompanying the Selective Service Board letter, however, employed the "Supreme Being" test, a test which on March 8, 1965 the Supreme Court clearly rejected implying it to be an unconstitutional requirement. United States v. Seeger, supra.

The Selective Service Board letter to Irons of May 14, 1963 said in part as follows:

"On April 8, 1963 this local board received a letter from you with respect to the Order to Report for Induction that was mailed to you on April 2, 1963. You failed to report for induction on April 19, 1963 in accordance with the order, and your case has again been reviewed by this local board.

"An order to Report for Armed Forces Physical Examination was mailed to you on January 25, 1963 scheduling your reporting date on February 8, 1963. On February 4, 1963 we received an undated letter from you with respect to this order. In reviewing that letter we note that among other things you stated 'I have come to consider myself a Quaker.' This statement raises a question in our minds as to whether or not you may claim to be a conscientious objector, and this question is further supported by numerous other expressions that you have

written that might indicate a claim of conscientious objection. The Selective Service Regulations require that when a registrant enters a claim of conscientious objection it is necessary that the local board forward a Special Form for Conscientious Objector, SSS Form 150, to him to afford him an opportunity to enter his claim in his file by completing and returning the form. It is our policy to liberally interpret statements of registrants with respect to a possible claim of conscientious objection as a request for a Special Form for Conscientious Objector. Because of this we are forwarding such a form to you in order that you may complete and return it to us to furnish information substantiating a claim that you may have."

The letter also said that the sending of the form did not alter Irons' "status with respect to the delinquency" declared by the board; but it clearly implied that Irons' reply would be given consideration by the Board or by the State Director of Selective Service.

As we have noted the accompanying form required affirmation of "a Supreme Being."

In reply Irons said:

"I have not filled out the enclosed form, but let me discuss here some of the points raised in the form, with the understanding that these are not answers to the questions and are not a claim for exemption. They are merely put forth so that we may better understand each other's position. First, I do consider myself a Quaker, although as yet I belong to no Quaker meeting. I intend to join a meeting in Philadelphia as soon as I am married, since my fiance belongs to this meeting. I was born and raised a Unitarian, and as such was taught to approach religion with an open mind, free from dogma. Religion, to me, does not involve the worship of a Supreme Being in the orthodox sense, but is the attempt to evolve for oneself a set of ethical standards and values. The highest of these values is love, and this is the basis of my life. I do not always reach it, but in the striving is the religious quality of my life. I do not believe that I have any duties 'superior to those arising from any human relation,' since the entirety of my life involves human relationship. The concept of a supernatural God is one which I have not found to be meaningful."

In the *Seeger* opinion the Supreme Court described some major religious groups in the United States as follows:

"Some believe in a purely personal God, some in a supernatural deity; others think of religion as a way of life envisioning as its ultimate goal the day when all men can live together in perfect understanding and peace." United States v. Seeger, supra 380 U.S. at 174, 85 S.Ct. at 858.

Discussing the 1948 Amendment to the Universal Military Training and Service Act, 50 App. U.S.C. § 456(j), which reads in relevant part:

"Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation. * * *."

the court said:

"Under the 1940 Act it was necessary only to have a conviction based upon religious training and belief; we believe that is all that is required here. Within that phrase would come all sincere religious beliefs which are based upon a power or being or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent. The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with the well-established congressional pol-

icy of equal treatment for those whose opposition to service is grounded in their religious tenets." United States v. Seeger, supra, at 176, 85 S.Ct. at 859.

The opinion of the Supreme Court in *Seeger* was released March 8, 1965 three weeks before Irons' trial on March 29, 1965. Furthermore at oral argument of this appeal counsel for the government conceded that prior to trial he knew that appellant, Irons, was taking the position that under the *Seeger* interpretation of the statute, 50 U.S.C.App. § 456(j), he was entitled to classification as a conscientious objector. And this was the effect of appellant's testimony at trial.

It should be noted that we do not deal here with the difficult problem of retroactive or prospective effect of a Supreme Court interpretation which changed prior law. Cf. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

My dissent does not assert that appellant is entitled to conscientious objector status or that he was classified 1A without any basis in fact for that classification. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423 (1946).

In this case between appellant's being sent a conscientious objector questionnaire which required his affirmance of an unconstitutional condition and his trial for violating Universal Military Training and Service Act orders, the Supreme Court eliminated the previous unconstitutional condition. I would hold that under these facts appellant should have been given a chance prior to trial to apply to the Selective Service Board for conscientious objector status under the *Seeger* ruling.

As I read this record no final decision has ever been made by the Selective Service Board under the law as it was declared to be by the Supreme Court in *Seeger* prior to Irons' trial and conviction. In my opinion the Justice Department and the District Court should have required in the interest of justice such a completion of the administrative record —and we should now.

I would vacate this conviction and remand for further proceedings consistent with this opinion.