**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack Frederick McKART, Defendant-Appellant.**

**No. 18194.**

United States Court of Appeals
Sixth Circuit.

June 14, 1968.

Arnold Morelli, Cincinnati, Ohio, Bauer, Swain & Morelli, Cincinnati, Ohio, on brief, for defendant-appellant.

Thomas R. Smith, Asst. U. S. Atty., Cincinnati, Ohio, Robert M. Draper, U. S. Atty., Cincinnati, Ohio, on brief, for plaintiff-appellee.

Before PHILLIPS, CELEBREZZE and PECK, Circuit Judges.

PHILLIPS, Circuit Judge.

This case arises out of the failure and refusal of Jack Frederick McKart to comply with an order of his local draft board to report for and submit to induction into the Armed Forces of the United States. He was indicted for willfully and knowingly failing and neglecting to perform a duty required of him under the Selective Service Act. 50 U.S.C. App. § 462. He waived a jury trial, was found guilty by the District Judge and was sentenced to a prison term of three years.

McKart's indictment and trial were preceded by a long and somewhat complicated history of dealings with his local draft board. He was born February 13, 1943. Shortly after his eighteenth birthday he completed and filed his Selective Service questionnaire. His local board classified him I–A and notified him accordingly on February 26, 1963. McKart made no attempt to appeal his classification.

On March 23, 1964, he was ordered to report for a preinduction physical examination on April 21. He failed to report. On May 1, 1964, the draft board ordered him to report for induction on May 11. Again he failed to report. Instead he wrote a letter stating his refusal to submit to induction and expressing his total antipathy for the Selective Service System. He said that he did not believe in killing; that the Selective Service System violated his beliefs; and that he therefore refused to have anything to do with it. He objected to conscription as slavery, stating: "I refuse to serve this country armed, and I refuse to serve it unarmed by doing alternative service."

The draft board replied by furnishing McKart the special form for conscientious objector and suggesting that he complete the form and return it. The board also stated in its letter that McKart's original questionnaire had indicated that he was the sole surviving son of a family of which one or more members were killed in action or died in the line of duty, and asked for further information. On May 20, 1964, McKart returned the blank form to the board making it clear that he did not wish to become classified as a conscientious objector, saying: "I simply no longer want to have anything to do with the Selective Service System." At the conclusion of this letter he stated:

"If I indicated that I was a 'Sole Surviving Son' when I filled out your forms around my eighteenth birthday, then I made a mistake. I do not even have any brothers or sisters. But my father was killed in the Second World War. I do not have the specific information you asked for."

Although McKart did nothing to claim an exemption as a sole surving son, the draft board on its own initiative cancelled his induction orders and classified him IV–A. From July 27, 1964, until February 14, 1966, McKart remained in the IV–A classification.

Early in 1966 the board learned of the death of McKart's mother. His classification was changed from IV–A to I–A. When McKart was informed of this reclassification, he made no effort to appeal. Subsequently he was ordered to report for a physical examination on March 17, 1966, and for induction on April 21, 1966. He failed to comply with either of these orders.

At the trial McKart attempted to defend his refusal to report for induction on the ground that he still is entitled to a IV–A classification as a sole surviving son under 50 U.S.C. App. § 456(o). In a well-reasoned memorandum opinion, District Judge David S. Porter held that the failure of McKart to exhaust his administrative remedies within the Selective Service System barred him from raising the validity of his classification as a defense in the criminal proceeding. Judge Porter said:

> "Of course, he had not exhausted his administrative remedies. He has simply, from the outset, not had anything to do with the Selective Service System.
>
> \*   \*   \*   \*   \*   \*
>
> " \*   \*   \* The fact of the matter is, however, he did not claim the exemption he now seeks. The draft board gave it to him. He simply rejected the whole idea of the draft. \*   \*   \* "

On appeal McKart's theory is that a Selective Service registrant is not required to exhaust his administrative remedies when the issue of classification is purely one of law and the position of the Selective Service is so well established that an appeal would be futile.

■ The issue before us is this: When a Selective Service registrant who has not appealed his classification through the Selective Service procedures is tried for failure to submit to induction into the Armed Forces, may the registrant raise the defense, upon wholly undisputed facts, that he was wrongfully classified in violation of statute? We answer this question in the negative and affirm the conviction.

In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 the defendant, a conscientious objector, was tried for willful failure to report for assignment to work of national importance. Falbo defended on the ground that he was entitled to a statutory exemption from all forms of national service. The defendant Falbo challenged the order of his local board before he had exhausted his administrative remedies. The Supreme Court held that Falbo could not raise this defense. After the decision in Falbo, many courts held that, even after exhaustion of administrative remedies, a registrant could not defend a criminal prosecution on the ground that the board lacked jurisdiction to impose the classification. Indeed, most courts held that judicial review of an erroneous classification could be had only in a habeas corpus proceeding after induction.

In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the Supreme Court held that the defense of an invalid classification may be raised in a criminal prosecution where the registrant has exhausted all administrative remedies, reported for induction, was accepted, but refused to submit to induction. In Estep the Court emphasized that the defendant in Falbo had not exhausted his administrative remedies:

> "Falbo v. United States, supra, does not preclude such a defense in the present cases. In the Falbo case the defendant challenged the order of his local board before he had exhausted his administrative remedies. Here these registrants had pursued their administrative remedies to the end. All had been done which could be done. Submission to induction would be satisfaction of the orders of the local boards, not a further step to obtain relief from them." 327 U.S. at 123, 66 S.Ct. at 428.

■ The requirement that judicial review of a registrant's classification must await both the full exhaustion of administrative remedies and acceptance for induction is founded on the policy of mobilizing national manpower in the short-

est practical period. Falbo v. United States, supra, 320 U.S. 549, 554, 64 S.Ct. 346. Until the registrant reports and is accepted for induction there is always the possibility that he may be rejected because of his physical condition or perhaps an erroneous classification may be changed. In United States v. Irons, 369 F.2d 557, 558–559 (6th Cir.), Judge Mathes said:

"Not only did appellant spurn all administrative remedies available to him, including appeal [cf. Maddox v. United States, 264 F.2d 243 (6th Cir. 1959)]; he also refused to report for, or submit to a phsyical examination. Conscientious objectors are not excused from a physical examination. Indeed, no registrant is, and for good reason. [See Selective Service Regs. § 1628.11, 32 C.F.R. § 1628.11 (1965 Supp.).] Even if improperly classified 1–A, there remains the possibility, unfortunately all too great in these times, that he will fail the physical examination and be reclassified as 4–F. Where that is the result, all constitutional and other problems incident to 1–A classification disappear of course, *eo instanti*. [See: Falbo v. United States, 320 U.S. 549, 553, 64 S.Ct. 346, 88 L.Ed. 305 (1944); Moore v. United States, 302 F.2d 929 (9th Cir. 1962); United States v. Balogh, 160 F.2d 999 (2nd Cir. 1947).]

"The same policy requires every registrant to report for induction as ordered, even though he may have valid legal grounds for refusing to submit to induction. [Cf.: Estep v. United States, supra, 327 U.S. 114, 66 S.Ct. 423; Williams v. United States, 203 F.2d 85, 88 (9th Cir. 1953).]"

Accord, Moore v. United States, 302 F.2d 929 (9th Cir.); Breen v. Selective Service Local Board No. 16, 284 F.Supp. 749 (D.Conn.).

In support of the view that administrative remedies need not be exhausted before the validity of a classification is subject to judicial review, appellant relies on the cases of Wills v. United States, 384 F.2d 943 (9th Cir.) cert. denied 392 U.S. 908, 88 S.Ct. 2052, 20 L.Ed.2d 1366, and Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2d Cir.).

In *Wills* a registrant was permitted in a criminal proceeding to attack his reclassification without first exhausting his remedies of appeal within the Selective Service System. The local draft board did not mail the registrant his notice of delinquency until long after the expiration of the ten day period for appeal from his subsequent reclassification. The reclassification was found to be not in accordance with the procedure contemplated by the regulations. The Ninth Circuit held that "Knowledge of his delinquency status and impending induction would thus be relevant to appellant's decision whether to appeal, and the board's failure to disclose this fact at the proper time cannot be said to be without consequence to that decision."

In *Wolff* two college students were reclassified from II–S to I–A because they participated at the offices of a Selective Service board in a protest against American involvement in Vietnam. The two students sought to enjoin their local board from reclassifying them. In approving the injunction against the board, the Second Circuit summarized the basis of its action as follows:

"The two local boards did act without jurisdiction, the record shows that attempts to secure relief within the Selective Service System would be futile, and the threat to First Amendment rights is of such immediate and irreparable consequence not simply to these students but to others as to require prompt action by the courts to avoid an erosion of these precious constitutional rights. Under this combination of circumstances an injunction could properly issue." 372 F.2d at 820.

Relying upon the rationale of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, the Court held that injunctive relief prior to the exhaustion of administrative remedies was warranted because the effect of the reclassification was to curtail immediately the exercise of the First Amendment rights.

It is apparent that the principles applied in *Wills* and *Wolff* are inapplicable to the present case. In making his decision whether to appeal McKart was neither stifled nor misled by the action of his board. Nor does McKart purport to show that his classification by the board was undertaken as an attempt to curtail the exercise of his freedom of speech or any other Constitutional right.

We do not pass upon the question as to whether McKart would have been entitled to a IV–A classification under 50 U.S.C. App. § 456(*o*) if he had exhausted his administrative remedies.

Affirmed.

CELEBREZZE, Circuit Judge (dissenting):

Regretfully I cannot agree with the conclusion of my brethren in this case. It is clear that the Defendant had every intention to violate the Selective Service Act, but the fact is that he had no duty under any "directions made pursuant to" the Act that he could be guilty of failing to perform.

Defendant was indicted and tried for failing "to comply with an order of his local board to report for and submit to induction * * *." Section 456(*o*) of Title 50, App., provides that " * * * the sole surviving son of such family [the father of which was killed in action] *shall not* be inducted * * * " (emphasis added). The local draft board recognized at one time that the Defendant came under this exemption. When the Defendant's mother died, the board decided that the exemption no longer applied because, in their opinion, there was no "family" left. In my view, that decision was contrary to the clear wording of the statute and to the clear intent of Congress in providing for the exemption. Hence, I conclude that the board's order of induction was not "pursuant to" the Act but in contravention of the Act. Therefore, I can only conclude that regardless of how much he tried, and perhaps even wanted, to violate the Act, the Defendant was not guilty of the offense for which he was indicted and tried.

This is not a case where the existence of the exemption depends upon the board's first making a factual determination. Here the board had already determined that the Defendant was entitled to the exemption; the termination of that exemption resulted from the board's erroneous interpretation of the law. I feel, therefore, that application of the doctrine of exhaustion of administrative remedies is inappropriate in this case.

I would reverse and dismiss the indictment.