**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fred Harris BROOKS, Defendant-Appellant.**

**No. 18679.**

United States Court of Appeals Sixth Circuit.

Sept. 4, 1969.

Carlton H. Petway, Asst. U. S. Atty., Nashville, Tenn., for appellee; Gilbert S. Merritt, Jr., U. S. Atty., Nashville, Tenn., on brief.

Before O'SULLIVAN, PECK and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Fred Harris Brooks was convicted upon jury trial for refusal to submit to induction into the army, in violation of Section 462, Title 50, United States Code App. On March 15, 1968, he was sentenced to imprisonment for a term of four years. Defendant has remained at liberty pending determination of this appeal to us.

On April 30, 1964, Brooks registered with Selective Service System Local Board No. 20 at Nashville, Tennessee. He was classified II-S—deferred as a student until November 1, 1964. On December 9, 1964, he was classified I-A, but on May 7, 1965, was again deferred as a student in classification II-S. On November 9, 1966, he was reclassified I-A, but on February 6, 1967, he regained his II-S classification. On August 23, 1967, Brooks received his final classification of I-A. This reclassification was the product of the Board's determination that Brooks was not then "satisfactorily pursuing a full time course of instruction," a condition precedent to entitlement of a student deferment, as required by Selective Service System regulation, 32 C.F.R. § 1622.25 (d).

The original information provided by Brooks to his local board represented that he would obtain his academic degree on June 1, 1967. However, in June of 1967 Brooks replied to the board's Current Information Questionnaire that he had then completed only three and one-half years of college. He did not indicate when he expected to graduate. In July, 1967, a student certificate furnished by Tennessee A & I State University advised that at that time Brooks had completed "his third college year." This information, as against the earlier

Reber F. Boult, Jr. (Court Appointed), Atlanta, Ga., for appellant; Charles Morgan, Jr., Atlanta, Ga., Richard Bellman, Robert Carter, New York City, Howard Moore, Jr., Atlanta, Ga., Whitworth Stokes, Jr., Nashville, Tenn., on brief; Melvin Wulf, New York City, of counsel.

representation that Brooks would receive his academic degree on June 1, 1967, led the Board to the conclusion that Brooks was not making the satisfactory progress in college needed to warrant continuance of his II-S student deferment. Brooks was given notice of the August 23, 1967, reclassification to I-A with advice of his right to appeal and the time for taking an appeal.

Brooks took no appeal from this final I-A classification and on October 27, 1967, he was ordered to report for induction on November 16, 1967. On October 31 Brooks obtained SSS Form 150 —application for conscientious objector exemption—and thereafter delivered it unsigned to the Board. On November 15, 1967, the Board again reviewed Brooks' file, concluding as follows:

"Following receipt of Form 150, the local board reconsidered the case at the board meeting Nov. 15, 1967. They did not reopen under 1625.2 SSR because the board did not find there had been a change in registrant's status resulting from circumstances over which the registrant had no control."

Brooks was advised of this action and that his request for reopening of his case would not be granted. Brooks does not claim that he was entitled to conscientious objector status. On November 16, he reported to the induction center but refused to be inducted. He was thereafter tried to a jury in the District Court for the Middle District of Tennessee and was convicted.

At the conclusion of trial District Judge William E. Miller filed a memorandum opinion which, together with pretrial orders, considers and disposes of the thirteen "Issues Presented for Review" on this appeal. We attach Judge Miller's memorandum as an appendix hereto. We feel constrained, however, to supplement it because of the vigor of the attack on it by appellant's counsel. We discuss the following:

### 1. Composition of the grand and petit juries.

Upon a bare and conclusional assertion that the system used to select grand and petit juries in the Middle District of Tennessee constituted a systematic exclusion of "minority groups" from juries, defendant, a Negro, requested that subpoenaes be issued as a prelude to investigating the procedures employed in the Middle District of Tennessee. Appellant's counsel further charged that the key man system of selecting juries, presumably then used in the Middle District of Tennessee, was unconstitutional.

It should be first observed that there were seven Negroes on the grand jury which indicted Brooks. As to the practice of jury selection generally, the District Judge observed:

"As a matter of fact, speaking on racial grounds at this juncture, we have Negroes regularly and in sizeable numbers who serve not only on our grand juries, but on our petit juries as well, and as I say, all courts are sensitive to this problem in this day and time, and that is the reason why I think that I am thoroughly familiar with what is going on in this district."

Like assertions and charges have so recently been considered and found without merit by this Court that we need not here repeat our relevant views. See United States v. Hoffa, 349 F.2d 20, 27–33 (6th Cir. 1965), aff'd 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

### 2. Composition of Local Board No. 20.

■ a) Appellant claims that there exists nationally and in Tennessee a systematic exclusion of Negroes from membership on Selective Service Boards and that such situation "provides a defense to a Negro's prosecution for failure to submit to induction." The fact that one of the five members of Nashville's Local Board No. 20 was a Negro refutes this claim as a matter of fact. Aside from the factual situation in the case at bar, this general subject was considered by the Fifth Circuit in Clay v. United

States, 397 F.2d 901, 909–911 (5th Cir. 1968), remanded on other grounds, *sub nom.* Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969). We agree with that decision which held that the composition of each draft board did not have to reflect the racial balance of the community between whites and blacks and that there was not a national purpose to accomplish the charged discrimination.

b) It was stipulated that *at the time of trial*—March of 1968—only two of the five members of Local Board No. 20 resided within its jurisdictional boundaries and further that "Mr. Norman D. Baker, Mr. Henry A. McClaron and Mr. Walter E. Gasser, *deceased,* Members of * * * Board Number 20 * * * reside outside the jurisdictional boundaries of Local Board Number 20." Whether this was the composition of Brooks' draft board when his classification was considered is not clear; neither is it clear how you determine where a *deceased* person resides.

■ Whatever factual situation was thereby disclosed, the stipulation was offered to support a claim that the Board which ordered Brooks' induction was invalidly composed because of failure to comply with 32 C.F.R. § 1604.52(c) which provides:

> "The members of local boards shall be citizens of the United States who shall be *residents of a county* in which their local board has jurisdiction *and who shall also, if at all practicable, be residents of the area in which their local board has jurisdiction.*" (Emphasis supplied.)

No evidence was taken as to whether it was "at all practicable" to have all members of the board reside in the area in which the local board had jurisdiction. No reliance was put upon this situation as a ground for appeal from Brooks' I-A classification. There was no such appeal. The District Judge ruled on the point as follows:

> "The Court is of the opinion that defendant is precluded from raising this

defense for failure to exhaust his administrative remedies."

We agree, and consider that such ruling is supported by DuVernay v. United States, 394 F.2d 979, 981 (5th Cir. 1968), affirmed by an equally divided Supreme Court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969).

■ We consider also that the action of Local Board 20 cannot be here challenged on the ground of the lack of proper residential qualifications of some of its members. It was in all events a *de facto* board whose action is not subject to this collateral attack. The holding of the Fifth Circuit in Clay v. United States, *supra,* 397 F.2d at 911, supports this general view.

> "The Government argues—and we agree—that a draft board system which does not have a sufficiently representative number of Negro members is comparable to a malapportioned legislature. The acts of such a legislature are not invalid and the laws which it passes are not null and void. The acts of a malapportioned legislature or local or county commission or board are acts of a de facto political authority and valid despite their failure to be apportioned in accordance with Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968)."

See also, Ex parte Ward, 173 U.S. 452, 453, 19 S.Ct. 459, 43 L.Ed. 765 (1899); Jessen v. United States, 242 F.2d 213 (10th Cir. 1957); United States v. Richmond, 274 F.Supp. 43, 61 (C.D.Cal.1967).

### 3. Was Brooks entitled to a student deferment?

Brooks' only basis for avoiding a I-A classification was his claim to II-S deferment as a student. 32 C.F.R. § 1622.-25 provides as follows:

> "(a) In Class II-S shall be placed any registrant who has *requested* such deferment and who is *satisfactorily pursuing* a full-time course of instruc-

tion at a college, university, or similar institution of learning, such deferment to continue until such registrant completes the requirement for his baccalaureate degree, *fails to pursue satisfactorily a full-time course of instruction,* * * *." (Emphasis supplied.) It was the burden of Brooks to establish his continued entitlement to a II-S classification and subsection (d) of § 1622.-25 provides:

"It shall be the registrant's *duty to provide* the local board *each year* with evidence that he is satisfactorily pursuing a *full-time* course of instruction at a college, university, or similar institution of learning." (Emphasis supplied.)

■ As set out above, information given to the Board at the end of the school year in the summer of 1967 indicated that he had then only finished three years of college, whereas earlier information was that, had he been "satisfactorily pursuing a full time course of instruction", he should have been finished in June or December, 1967. In the information that Brooks filed with his Board in June of 1967, he did not indicate when he expected to graduate. It was on this basis that the Board unanimously replaced Brooks' II-S classification with that of I-A. Notice of this action and of his right to appeal and to a hearing were given to Brooks. He made no attempt to explain, if it could be explained, that the information received by the Board prior to the August 23, 1967, reclassification was incorrect, or that, notwithstanding its accuracy, he was nevertheless "satisfactorily pursuing a full time course of instruction." In our view, the determination, under all these circumstances, whether Brooks was entitled to continued deferment as a student was within the competence of the administrative agencies of the Selective Service System.

The trial court ruled that Brooks' contentions on this matter were foreclosed by his failure to exhaust administrative remedies. We agree and believe that the District Court's ruling finds support in our opinion in United States v. McKart, 395 F.2d 906 (6th Cir. 1968), rev'd 395 U.S. 185, 89 S.Ct. 1657, 23 L. Ed.2d 194 (1969). The Supreme Court's reversal did not weaken the rule's application here. The Court there held that the exhaustion of remedies doctrine did not apply to McKart because as a "sole surviving son" he was not subject to the draft *under any circumstances* and the resolution of that question was not something that could be affected by the discretion or expertise of a draft board or an appeal board. In the case at bar, Brooks' denial of continued status as a student entitled to deferment II-S was a matter within the competence of the various administrative agencies which make up the System. The information that was provided by Brooks and his school in 1967 was such that it called for administrative consideration. The burden of establishing continued entitlement to a student deferment was on Brooks. The information that he provided the local board did not establish that he was entitled to the student deferment. If the information which he gave to his board was inaccurate, a hearing on appeal may have permitted some corrections. Footnote 15 to Justice Marshall's opinion in *McKart* is here relevant.

"Of course, it is necessary that the local board which has the responsibility of classifying registrants in the first instance, be given the information necessary to perform its function. However, the present case does not present an instance where a registrant is trying to challenge a classification on the basis of facts not presented to the local board. In such a case, the smooth functioning of the system may well require that challenges to classifications based upon facts not properly presented to the board be barred." 395 U.S. at 198, 89 S.Ct. at 1665.

We are satisfied that Brooks' failure to exhaust available remedies foreclosed his assertion of improper classification as a defense to prosecution for refusing in-

duction. Our view in this regard is supported by DuVernay v. United States, 394 F.2d 979 (5th Cir. 1968) aff'd by equally divided Supreme Court, 394 U.S. 309, 89 S.Ct. 1186, 22 L.Ed.2d 306 (1969); Edwards v. United States, 395 F.2d 453, 454 (9th Cir. 1968), cert. denied 393 U.S. 845, 89 S.Ct. 128, 21 L.Ed.2d 115 (1968); Campbell v. United States, 396 F.2d 1 (5th Cir. 1968); Noland v. United States, 380 F.2d 1016, 1017 (10th Cir. 1967), cert. denied 389 U.S. 945, 88 S.Ct. 308, 19 L.Ed.2d 299 (1967); and Thompson v. United States, 380 F.2d 86, 88 (10th Cir. 1967).

We have considered other assignments of error and find either that they are satisfactorily discussed and disposed of in Judge Miller's memorandum or are without merit.

Judgment affirmed.

## APPENDIX

### [OPINION OF THE DISTRICT COURT]

### MEMORANDUM

In this criminal proceeding the defendant Fred Brooks at the close of the Government's proof moved the Court for a judgment of acquittal. The Court, after taking the matter under advisement, denied the motion from the bench, stating that it would subsequently set forth the reasons therefor in a memorandum.

The indictment in this action charged that on November 16, 1967, the defendant, a registrant under the Universal Military Training and Selective Service Act, 50 App.U.S.C. § 451 et seq., unlawfully, wilfully, and knowingly failed to fulfill the duty required of him under said act in that he failed to comply with an order of Tennessee Local Board No. 20 to report for and submit himself to induction into the Armed Forces of the United States. The case was tried to the Court and a jury on March 12, 1968. Following the ruling by the Court on the motion for judgment of acquittal, the jury on March 15, 1968, returned a verdict of guilty.

The facts of this case, as developed at the trial, indicate that the defendant enrolled at Tennessee A. & I. State University for the winter quarter on December 9, 1963. On April 30, 1964, the defendant registered with Local Board No. 20, informing the Board that he had completed one year of college and that he expected to receive a degree in June 1967. The Board subsequently gave the defendant a II-S classification.

With the exception of the fall and winter quarters of the 1964–65 school year, the defendant has been enrolled at the University carrying a full load of course work and earning good grades. While defendant was out of school during the portion of the 1964–65 year, he was given a I-A classification. His II-S classification was restored when he returned to school.

On June 23, 1967, in response to a Selective Service System Questionnaire, the defendant informed Local Board No. 20 that he had completed three and a half years of college and that he expected to be a full time student at the University during the next term. He left blank the question of when he expected to receive a degree, and he made no explicit request for a student deferment. On July 17, 1967, the University informed the Board that Brooks had completed three years of college work. The University did not answer the question as to when the defendant was expected to receive a degree.

On August 23, 1967, the defendant was mailed a I-A classification notice. He was informed that he could ask for a personal appearance before the Board or make an appeal within thirty days. He was also informed that a Government Appeal Agent was available to aid him with his procedural rights if he so desired. Following his I-A classification the defendant did not at any time ask for a personal appearance before the Board or attempt to initiate an appeal.

On October 27, 1967, the Board ordered the defendant to report for induction into the Armed Forces on November 16,

**508**

1967. Subsequently, on November 6, the Board received from the defendant Selective Service System Form 150 requesting for the first time a conscientious objector classification. On November 15 the Board met and considered Form 150 but refused to reopen the defendant's classification.

On November 16 the defendant reported to the induction center but refused when his name was called to take a step forward to acknowledge his induction into the Armed Forces. After refusing for a second time to take the step forward, the defendant was taken to the office of the Commanding Officer where he was informed of his rights and that his refusal to submit to induction would constitute a felony. He was then asked if he understood the situation he was in and he replied that he did. The defendant was given another opportunity to submit to induction and he again refused. Shortly thereafter the defendant informed a television news reporter that he was not going to participate in the Vietnam war since he believed that the war was unlawful, unconstitutional, immoral, and unjust.

The defendant contends under his motion for judgment of acquittal that the I-A classification given him on August 23, 1967, was an unreasonable, capricious, and arbitrary act by Local Board No. 20 in that there was no basis in fact for the classification. If the Board's reclassification order was unreasonable and arbitrary, then it would be unlawful and the defendant could not be punished for a refusal to obey an induction order issued pursuant thereto.

The Supreme Court has held that judicial review of a classification made by a local draft board is very limited in nature. The Court is not free to weigh the evidence to determine whether the classification made by the local board was justified. The decision of a local board made in conformity with the regulations is final even though it may be erroneous, and the decision may be set aside only if there is no basis in fact for the classification given the reg-

istrant. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

In this case the defendant in April, 1964 stated to the Board that he had completed one year of school and that he would receive a degree in June of 1967. Conceding, as defendant contends, that the Board could not have fairly held the defendant to this statement three years later and classified him I-A on that basis alone, there was in the defendant's Selective Service System file the further information from the University that as of July, 1967 the defendant had completed three years of college work. The information before the Board thus reflected that the defendant had completed three years of school from December, 1963 to July, 1967. The Selective Service System regulations, 32 C.F.R. § 1622.25, provide:

> (a) In Class II-S shall be placed any registrant who has requested such a deferment and who is satisfactorily pursuing a full-time course of instruction * * *, such deferment to continue until such registrant * * * fails to pursue satisfactorily a full-time course of instruction. * * *
>
>    *    *    *    *    *    *
>
> (c) A student shall be deemed to be "satisfactorily pursuing a full-time course of instruction" when, during his academic year, he has earned * * credits toward his degree which, when added to credits earned during prior academic years, represent a proportion of the total number required to earn his degree at least equal to the proportion which the number of academic years completed bears to the normal number of years established by the school to obtain such degree. For example, a student pursuing a four-year course should have earned 25% of the credits required for his baccalaureate degree at the end of his first academic year, 50% at the end of his second academic year, and 75% at the end of his third academic year.

(d) It shall be the registrant's duty to provide the local board each year with evidence that he is satisfactorily pursuing a full-time course of instruction * * *.

Under this regulation it is apparent that to be entitled to a II-S classification a student must be "satisfactorily pursuing a full-time course of instruction." As the Court reads the regulation, this means that a student pursuing a normal four year course of study has four years from the time he enters school within which to obtain his degree. Since the University stated to the Board in July of 1967 that the defendant had completed three years of work, the Board could reasonably have deducted that the defendant could not possibly complete the work for his degree by December of 1967 when the four year period would have elapsed. That this conclusion of the Board was not arbitrary or capricious is strengthened by the fact that the defendant did not specifically request a student classification, as is required under the statute and regulations, and by the additional fact that neither the defendant nor the University was able to inform the local board when the defendant was expected to receive his degree. For the reasons stated the Court finds that there was a basis in fact for the defendant's I-A classification.

Further, the defendant's contention on this matter is foreclosed by his failure to exhaust his administrative remedies. As stated above, the defendant after his I-A classification did not ask for a hearing before the Board nor appeal the decision of the Board. He was fully informed that he had both of these alternatives available to him. When a defendant has not utilized his administrative remedies, he is precluded from attacking his classification in a prosecution for failing to submit to induction. DuVernay v. United States, 394 F.2d 979 (5th Cir. Feb. 7, 1968); United States v. Dunn, 264 F.Supp. 112 (D. Mass.1967); United States v. Kurki, 255 F.Supp. 161 (E.D.Wis.1966).

The next contention made by defendant is that the failure of Local Board No. 20 to reopen his classification upon his request for conscientious objector status was arbitrary, capricious, and unreasonable. As stated above, the defendant made no attempt to obtain a conscientious objector status until after his order to report for induction. The regulations provide that a local board may not reopen the classification of a registrant after an order to report for induction unless the local board first specifically finds that there has been a change in the registrant's status resulting from circumstances over which the registrant has no control. 32 C.F.R. § 1625.2.

Selective Service System Form 150 submitted to Local Board No. 20 by the defendant after his order to report for induction indicates that his claimed belief as a conscientious objector grew out of his activities in civil rights activities over a period of years. The defendant did not indicate why he had not previously requested a conscientious objector classification, nor did he allege any change in his status resulting from circumstances over which he had no control. In the absence of an allegation of such change of status, the Board in refusing to reopen the classification acted reasonably and as required by the regulations. To hold otherwise would mean that the selective service system process could be continually disrupted and delayed by eleventh hour requests for reclassification. United States v. Taylor, 351 F.2d 228 (6th Cir. 1965).

The defendant also contends that he had a right to refuse induction into the army because he was unacceptable for induction under Army Regulation 601–270, paragraph 23. This regulation provides that one who has been convicted of a felony punishable for a term exceeding one year is unacceptable for service in the armed forces unless such disqualification is waived by the Armed Forces Moral Waiver Determination Board. Also, a waiver must be obtained under this regulation when one has

been convicted of more than one misdemeanor or minor offense. The regulation further provides that one who has a criminal charge filed and pending against him is unacceptable and that a waiver will not be granted in this instance.

The record in this case indicates that the defendant at the time of the induction order had been involved in several minor offenses but had never received a fine or imprisonment. There was also a three year old criminal charge against the defendant in Louisiana. Major Billy LaFever, the commanding officer of the induction center, testified that the defendant was morally, as well as physically and mentally, acceptable for service in the armed forces. He stated further that the induction center had inquired into the minor offenses on defendant's record and into the Louisiana charge, that this had been done partly by letter and partly by telephone, and that it was determined that no moral waiver was necessary in defendant's case. Accordingly, a Statement of Acceptability, DD Form 62, was sent to Local Board No. 20 on October 17, 1967.

The Court is of the opinion that the record reflects that the induction center inquired into any charges or offenses allegedly committed by defendant and satisfied itself that defendant was morally acceptable. The induction center substantially complied with Army Regulation 601–270, paragraph 23, making an administrative investigation and decision with which the courts should not interfere.

Moreover, the defendant's argument implies that the regulation requiring a waiver where criminal charges are pending confers an absolute right upon a registrant to refuse induction unless the waiver is obtained. In the Court's view, the regulation is not susceptible of such a sweeping interpretation. While the regulation creates a right in the armed forces to refuse to accept a registrant under these conditions, it creates no right in the registrant to refuse to be inducted. The apparent purpose of the reg-

ulation is for the benefit of the armed forces in avoiding conflict with the civil authorities and in allowing the army to refuse to induct those who are morally unfit and not acceptable for that reason. To adopt the defendant's contention would mean that a registrant who has been ordered to report for induction could, prior to the date he is ordered to report, commit an offense and, if the charge was pending at the date he is to be inducted, use his criminal activity, even though minor in character, to his benefit as a valid reason for refusing to be inducted. A more reasonable view is that the regulation does not preclude the authorities from accepting a registrant when it determines after inquiry that a registrant is morally fit despite pending criminal charges.

Another contention made by defendant is that his classification and induction order were invalid because three members of Local Board No. 20 reside ouside the geographical jurisdiction of the Board. The Court is of the opinion that the defendant is precluded from raising this defense for failure to exhaust his administrative remedies. (See authorities cited above.) Moreover, the regulations provide that members of a board may live outside the board area if it is not practicable for them to live within the jurisdiction, 32 C.F.R. § 1604.52(c), a question political in nature and not appropriate for judicial determination. In any event there are no facts in the present record to show that the appointing authority in any way abused its discretion in appointing members of the Board here involved.

The Court has also examined the defendant's remaining contentions that Selective Service System Forms 100 and 150 are unconstitutional under United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and under the First Amendment, and that the evidence was insufficient to warrant a verdict of guilty. These contentions in the Court's opinion are wholly without merit.

/s/ WM. E. MILLER
United States District Judge