The **UNITED STATES**

v.

**Juan Daniel GONZALEZ, Jr.**

No. 72-CR-733.

United States District Court, E. D. New York.

Oct. 11, 1973.

Robert A. Morse, U. S. Atty., E.D.N.Y., by Thomas R. Maher, Ass't U. S. Atty.

Jesse Berman, New York City, for defendant.

## MEMORANDUM DECISION

COSTANTINO, District Judge.

This is a criminal prosecution charging Juan Daniel Gonzalez with failure to report for induction into the armed forces in violation of 50 U.S.C. App. § 462(a) (1971) and 32 C.F.R. § 1632.14. Defendant waived a trial by jury, and the case was tried to the court on May 9, 1973. Decision was reserved.

There is no dispute as to the facts in this case. Defendant registered with Selective Service Local Board Number 45 in Brooklyn, N. Y. in October 1965 while he was a full-time student at Columbia University. He received a student deferment until he was due to graduate in 1968. In July 1968 defendant informed the board that as his mother and sister were financially dependant upon him, he desired a hardship deferment. He further informed the board that he was employed as an Educational Trainer with the Neighborhood Youth Corps. In response to defendant's hardship deferment claim, the Local Board sent him a Dependency Questionnaire (SSS Form 118). Although defendant failed to complete the Dependency Questionnaire, he nonetheless met with the Local Board at its urging on October 16, 1968. At the time of the meeting he no longer claimed the hardship deferment, but rather requested an occupational deferment based on his employment with the Harlem Educational Program. The Local Board denied his claim for an occupational deferment in November of 1968 and gave him a 1-A classification. The board further advised defendant of his right to meet with the Local Board at a personal appearance, pursuant to 32 C.F.R. § 1624.1(a) (1973), at which time he could again pursue his claim. In addition, defendant was advised of his right to appeal the determination of the Local Board to the State Appeal Board. In accordance with defendant's letter of December 5, 1968, his classification was appealed to the State Appeal Board.

Prior to the appeal, however, the Local Board desired a determination as to whether defendant was fit for military service. He was scheduled for a preinduction examination on March 18–19, 1969. Defendant's Selective Service file indicates that before his examination the Selective Service was aware that the defendant was subject to pending criminal charges. It appears that on February 2, 1968 the defendant committed the offense of criminal trespass, second degree, N.Y. Penal Law § 140.10 (McKinney's Consol.Laws, c. 40, 1967). Charges were brought against him at that time. On July 16, 1969 defendant received a conditional discharge. Therefore, at the time of the preinduction examination, March 18, 1969, a criminal charge was pending against him. DD Form 47, dated March 10, 1969, indicates that the Selective Service nonetheless found that a "moral" waiver was not necessary and that defendant would be acceptable for induction into the armed forces if he passed the preinduction examination. (DD Form 47, Items 13a, 13b, 21a, 22a). At the examination a government psychiatrist interviewed the defendant and his report recited that "as a psychiatrist who finds no psychopathology I have to consider him [defendant] acceptable." The psychiatrist's report also stated that defendant told him that he had had a charge of criminal trespass filed against him which had

been dropped. A form in the file entitled "PROCESSING SHEET AFEES" (Armed Forces Examining and Entrance Station) dated March 18, 1969 and bearing defendant's register or tag number (144) is stamped "administrative reject." The sheet also contains the following sentence on the bottom of the page:

> Reg. is presently awaiting trial 29 Apr 69 for Crim. Trespassing & Dis Con. Verified per telecon attorney David LaBelle NYC 19 March 69.

However, the final disposition of the preinduction examination was that defendant was not an administrative reject because of the pending charge, nor was a moral waiver required. He was found fit for military service and a Statement of Acceptability (DD Form 62) was sent to defendant informing him on March 27, 1969.

In accordance with his letter of appeal of December 5, 1968, the Local Board scheduled defendant to meet with it on April 16, 1969. Defendant failed to appear. In addition, defendant's employer failed to provide any of the employment information requested by the board. On April 18, 1969 defendant was advised by the Local Board that it had reviewed his case and had retained him in the 1–A classification. Defendant was further advised that his file was being forwarded to the State Appeal Board. In January, 1970 the State Appeal Board notified the defendant that it had unanimously retained him in the 1–A classification. In November, 1970, defendant's draft lottery number of 171 was reached and he was scheduled to report for induction on November 19, 1970. Defendant failed to report for induction and was indicted for violation of 50 U.S.C. App. § 462(a) (1971); 32 C.F.R. § 1634.14.

Defendant admits all the above facts but argues (1) that the induction order was invalid in that at the time of his preinduction examination the charge of criminal trespass in the second degree was pending against him and (2) he received inadequate notice of his induction

order. In support of his first defense he cites AR 601–270 paragraph 3–9(c):

> Men who have criminal charges filed and pending against them alleging a violation of State, Federal, or territorial statute are unacceptable. . . . The statement "suggest reevaluation of moral acceptability upon disposition of criminal charges" will be entered in the remarks section, DD Form 62 (statement of acceptability) for registrants found disqualified for induction on the basis of this paragraph.

It is defendant's position that a reconsideration was necessary after the charges had been disposed of or that a "moral waiver" was required to induct him and since none was processed by the AFEES, the induction order was illegal and he was not required to obey it. Since the army did not follow its own procedures, defendant argues, the induction order was invalid and he cannot be punished for refusing induction.

■ It must initially be pointed out that conviction of a single minor misdemeanor such as criminal trespass does not require the army to obtain a moral waiver. AR 601–270 paragraph 3–9(b), AR 601–270, Appendix W–2. Had defendant been convicted of the trespass charge on March 18, no waiver would have been necessary. However, the charge was pending as of that date and therefore paragraph 3–9(c) was operative.

■ There are three reasons why this court concludes that defendant's first defense fails. Even if it is argued that a reconsideration of defendant's status was necessary after the pending charges were disposed of, or that a moral waiver was necessary, the defendant by his own statement is estopped from utilizing these procedural omissions to escape prosecution. Defendant told the examining psychiatrist on March 19, 1969 at the preinduction examination that the charges had been "dropped." This statement was entered on the examination records. Defendant now seeks to avoid the consequences of his

refusal to report for induction when the induction order was issued in part because of his own misstatement. He should not be allowed to do this.

■ Secondly, an analysis of the waiver sections of the regulations indicates that they are for the benefit of the armed forces, not inductees. In United States v. Brooks, 415 F.2d 502, 510 (6th Cir. 1969), the Sixth Circuit quoted with approval the district court's interpretation of the pending charge and waiver regulations:

> [T]he defendant's argument implies that the regulation requiring a waiver where criminal charges are pending confers an absolute right upon a registrant to refuse induction unless the waiver is obtained. In the Court's view, the regulation is not susceptible of such a sweeping interpetation. While the regulation creates a right in the armed forces to refuse to accept a registrant under these conditions, it creates no right in the registrant to refuse to be inducted. The apparent purpose of the regulation is for the benefit of the armed forces in avoiding conflict with the civil authorities and in allowing the army to refuse to induct those who are morally unfit and not acceptable for that reason. To adopt the defendant's contention would mean that a registrant who has been ordered to report for induction could, prior to the date he is ordered to report, commit an offense and, if the charge was pending at the date he is to be inducted, use his criminal activity, even though minor in character, to his benefit as a valid reason for refusing to be inducted. A more reasonable view is that the regulation does not preclude the authorities from accepting a registrant when it determines after inquiry that a registrant is morally fit despite pending criminal charges.

It must be pointed out that in the *Brooks* case the court dealt with charges pending at the date of induction. In the case before this court the charges were pending only at the time of the prein-duction examination. A conditional discharge was imposed July 16, 1969 and by November 19, 1970 when defendant was due to report for induction the conditional discharge had expired. N.Y. Penal Law § 65.05, subd. 3(b) (McKinney Supp.1972).

*3. Period of conditional discharge.* Unless terminated sooner in accordance with the code of criminal procedure, the period of conditional discharge shall be as follows: . . .

(b) One year in the case of a misdemeanor or a violation.

■ Finally as part of his argument defendant cites 50 U.S.C. App. § 454(a) (1971):

> No person shall be inducted into the Armed Forces for training and service . . . until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense.
> . . .

He maintains that his induction order was based on an incomplete and incorrect record and therefore was invalid. However, the section above reads "no person *shall be inducted . . .*" and therefore does not cover defendant. He was at the preinduction stage when the error was made. Any mistake made by the armed forces at the time of the preinduction examination could have been remedied at the time of induction. Specifically, AR 601–270 paragraph 5–26(b) states:

> Notwithstanding entries made in item 21a at the time of preinduction processing, the registrant will be personally interviewed to determine if he has a record of convictions or adverse juvenile adjudication or charges filed and still pending since the time of preinduction processing. A "YES" entry will require registrant to undergo processing prescribed by paragraph 3–8 and 3–9 provided he is otherwise qualified. Appropriate entries will be made under item 21b as prescribed in paragraph 5–4c(5).

 Defendant's second defense is that the Selective Service System did not give him adequate notice of the induction order in that it did not send the notice to a proper address. From the record it appears that the Local Board sent all mail to defendant at the addresses he supplied. On February 25, 1968 the board received an unsigned letter from defendant with an address (216 West 104th Street, Manhattan) that was different from the mailing addresses he had previously supplied. Because it was unsigned, the board followed its regular procedure and did not enter the new address on its records. Thereafter, in July, 1968 defendant, in filling out a Current Information Questionnaire, gave one of the previous mailing addresses (104–35 102nd Street, South Ozone Park, Queens) as his mailing address. It was to this address that in October 1968 the Local Board sent a letter to Gonzalez to which he responded by reporting on October 16, 1968. In November of 1968 a notice of classification was sent to the Ozone Park address and Gonzalez appealed that classification within 30 days. On March 4, 1969 a preinduction order to report was mailed to the Ozone Park address and Gonzalez reported there on March 18, 1969. The court finds that the Local Board followed proper procedures in notifying defendant of his status and that defendant received adequate notice.

An essential element of the crime of refusing to report for induction is that defendant must have done so "knowingly." The government must show that he knew of his legal obligation and deliberately failed to perform it. United States v. Couming, 445 F.2d 555, 557 (1st Cir. 1971); United States v. Jacques, 463 F.2d 653 (1st Cir. 1972); United States v. Figurell, 462 F.2d 1080 (3d Cir. 1972); United States v. Day, 442 F.2d 1034 (9th Cir. 1971); United States v. Rabb, 394 F.2d 230 (3d Cir. 1968). The government has proven beyond a reasonable doubt that he received notice and did not report.

The question then arises as to whether the mistake made at the preinduction examination, if it was a mistake, excused defendant from his obligation to report for induction when he had received the order to do so. The answer must be that he is not excused. "Every registrant is required to report for induction as ordered even though he may have valid legal grounds for refusing to submit to induction, United States v. Irons, 6 Cir., 1966, 369 F.2d 557, 559; Nickerson v. United States, 10 Cir., 1968, 391 F.2d 760, 763, cert. denied, 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed.2d 1366." Schutz v. United States, 422 F. 2d 991 (5th Cir. 1970).

The court therefore finds that defendant knowingly failed to report for induction as ordered and is guilty beyond a reasonable doubt of the crime charged.

The foregoing opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 23(c) of the Federal Rules of Criminal Procedure.